HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NIRMAL SINGH UPPAL,

Petitioner,

v.

Kristi NOEM, *et al.*,

Respondents.

CASE NO. 2:26-cv-00711-RAJ

ORDER

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner Nirmal Singh Uppal's Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Mr. Singh Uppal's petition.

## II.    BACKGROUND

Mr. Singh Uppal is a citizen of India.  Dkt. # 5 ¶ 3.  He entered the United States on or around April 8, 2016 and was detained by border patrol agents shortly after. *Id.* ¶¶ 3–4. Mr. Singh Uppal claimed fear of return to India and his case was referred to the U.S. Citizenship and Immigration Service ("USCIS") for a credible fear interview. *Id.* ¶ 5.  On

ORDER – 1

or around May 10, 2016, USCIS made a positive fear finding and placed him in removal proceedings. *Id.* ¶ 6. On or around May 13, 2016, he was released on bond. *Id.* ¶ 7.

After his release, Mr. Singh Uppal applied for asylum and fully complied with all conditions of his release. Dkt. # 1 ¶ 23. He has no criminal convictions in the United States or any other country, has appeared for all required check-ins, and has complied with every directive asked of him. *Id.* He resided in the United States continuously for nearly ten years without incident. *Id.* ¶ 24. On October 24, 2023, an immigration judge granted the Department of Homeland Security's motion to dismiss Mr. Singh Uppal's removal proceedings without prejudice, thus allowing him to pursue relief in a non-adversarial setting with USCIS. Dkt. # 5 ¶ 9.

On January 24, 2026, border patrol agents encountered Mr. Singh Uppal near the U.S.-Canadian border. According to Respondents, Mr. Singh Uppal was in an area known for illegal border crossings and narcotics smuggling, was seen wearing a large backpack and attempting to hide, and initially attempted to flee from border patrol agents before eventually surrendering. *Id.* ¶ 10; Dkt. # 6-4 at 5. There is no evidence in the record regarding why Mr. Singh Uppal was at the border or that anything suspicious was recovered from his backpack. Mr. Singh Uppal was taken into custody, placed in new removal proceedings, and transferred to the Northwest ICE Processing Centering where he remains today. Dkt. # 5 ¶¶ 10–12.

### III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

ORDER – 2

## IV.  DISCUSSION

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v.* Brewer, 408 U.S. 471, 481 (1972)).  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.  In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context. *Id.* at 1207.  District courts have subsequently applied the *Mathews* test in this manner. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Respondents primarily argue Mr. Singh Uppal's detention is lawful because he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). Dkt. # 4 at 1.  The Court need not reach the question of whether Mr. Singh Uppal is detained pursuant to 8 U.S.C. § 1225 or § 1226 because in either case, the statute cannot replace the constitutional requirement of procedural due process. *See P.T. v. Hermosillo*, No. 25-cv-2249, 2025 WL

ORDER – 3

3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Tarbakhov v. Warden of Nw. Det. Ctr.*, No. 26-279, 2026 WL 653705, at *3 (W.D. Wash. Mar. 9, 2025) (rejecting argument that petitioner is subject to mandatory detention under § 1225(b) because "[r]egardless of the reason for Petitioner's detention, the Government remains subject to an obligation to 'effectuate [his] detention in a manner that comports with due process.") (quoting *E.A. T.-B.*, 795 F. Supp. 3d at 1322); *A.B.J.C. v. Hermosillo*, No. 26-cv-185, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026) ("Because the Court resolves this petition on procedural due process grounds, it does not reach Petitioner's additional arguments regarding . . . the proper statutory authority for his detention under 8 U.S.C § 1225(b) versus § 1226(a)").

Respondents next argue that under the *Mathews* test, Mr. Singh Uppal's detention comports with procedural due process. The Court disagrees.

Under the first *Mathews* factor, Mr. Singh Uppal has a strong interest in not being detained. The "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects."). "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). "Recently, courts throughout the Ninth Circuit have concluded that non-citizens who are released from ICE custody have a protected liberty interest under the Due Process Clause in remaining out of custody while their cases proceed." *Kumar*, 2025 WL 2677089, at *3 & n.3 (collecting cases). Mr. Singh Uppal has lived in the United States, free from detention and without incident, for nearly ten years. Dkt. # 1 ¶¶ 22–24. He has undoubtedly grown ties to the community and a strong liberty interest in that time.

ORDER – 4

Under the second *Mathews* factor, the procedures used to detain Mr. Singh Uppal created a high risk of an erroneous deprivation of liberty interests, and there is probable value in additional safeguards. Again, he lived in the community without incident for nearly ten years. *Id.* He has no criminal convictions, appeared for all required check-ins, and complied with the conditions of his release. *Id.* Respondents argue Mr. Singh Uppal's arrest at the U.S.-Canadian border "provide overwhelming objective evidence of flight risk." Dkt. # 4 at 9. There is no evidence in the record, however, of why Mr. Singh Uppal was at the U.S.-Canadian border, much less that he was engaging in any activity requiring immediate detention without a pre-deprivation hearing. "That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp. 3d at 1322. Additional safeguards, including notice and a meaningful opportunity to be heard before an immigration court, may have decreased the risk of arbitrary or otherwise unlawful detention.

Finally, under the third *Mathews* factor, the government's interest in detaining Mr. Singh Uppal without additional procedures is low. Respondents state they have a "compelling interest in border security, preventing abscondence, and ensuring appearance at removal proceedings." Dkt. # 4 at 9. There is insufficient evidence in the record that these interests would have been threatened by a pre-deprivation hearing. Mr. Singh Uppal complied with the conditions of his release for nearly ten years and attended all required check-ins. Dkt. # 1 ¶¶ 22–24. Even during the incident at the border, it is undisputed that he ultimately surrendered to border patrol agents. Dkt. # 4 at 3. Respondents cite no case suggesting they were entitled to detain Mr. Singh Uppal without a pre-deprivation hearing under these circumstances. Moreover, "although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing" before detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

ORDER – 5

Accordingly, the Court finds that all three *Mathews* factors support a finding that Mr. Singh Uppal's detention violates procedural due process and requires immediate release. Mr. Singh Uppal's petition seeks additional relief, including an order imposing the evidentiary standard at a subsequent pre-deprivation hearing and an order enjoining Respondents from placing ankle monitors on him absent certain circumstances. *See* Dkt. # 1 at 11. He does not support these additional requests with relevant legal authority, and accordingly the Court declines to grant the requests at this time.

### V.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court **ORDERS** that Respondents:

(1)  Shall immediately release Petitioner Singh Uppal from custody;

(2)  Shall file with the Court a notice within 2 business days confirming Mr. Singh Uppal's release; and

(3)  Shall not re-detain Mr. Singh Uppal unless and until providing him with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Dated this 30th day of March, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 6